IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| INTER-TEL INC., an Arizona corporation; and INTER-TEL TECHNOLOGIES INC., an Arizona corporation,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>WEST COAST AIRCRAFT ENGINEERING, INC., a Florida corporation; SCOTT EVASCHUK, individually and as agent for West Coast Aircraft Engineering, Inc.; AMERICAN AIRCRAFT SALES INTERNATIONAL, INC., a Florida corporation; THOMAS GIPE, individually, and as agents for American Aircraft Sales International, Inc.,<br><br>　　　　　　　　Defendants. | CIVIL ACTION NO. 8:04 CV-02224-T-17MSS |

## MOTION TO STRIKE AFFIDAVIT OF CHARLES F. TOLBERT

Plaintiffs Inter-Tel Inc. and Inter-Tel Technologies Inc. ("Plaintiffs") hereby move the Court to strike the Affidavit of Charles F. Tolbert, dated July 17, 2006 for the reason that a party may not be permitted to baldly repudiate his previous deposition testimony so as to create a jury issue by affidavit.

This motion is further supported by the Memorandum of Points and Authorities attached hereto and by reference incorporated herein.

**RESPECTFULLY SUBMITTED** this 28th day of August, 2006.

　　　　　　　　　　　　　By /S/Thomas A. Peppler
　　　　　　　　　　　　　　Arizona Attorney Bar No. 0002721
　　　　　　　　　　　　　　Attorney for Plaintiffs Inter-Tel Inc. and Inter-Tel Technologies Inc.
　　　　　　　　　　　　　　Thomas A. Peppler, P.C.
　　　　　　　　　　　　　　4647 N. 32nd St., Suite 115
　　　　　　　　　　　　　　Phoenix, Arizona 85018-3345
　　　　　　　　　　　　　　(602) 952-0555 Phone
　　　　　　　　　　　　　　(602) 952-0624 Facsimile
　　　　　　　　　　　　　　tp@inficad.com

# MEMORANDUM OF POINTS AND AUTHORITIES

<u>Plaintiffs' Statement of Facts</u>.

1. Plaintiffs incorporate herein by reference statements of fact 1 through 172 as set forth in the Plaintiffs' Statement of Facts ("PSOF") in Support of Their Opposition to Defendant's Motion for Summary Judgment and in Support of Their Motion for Partial Summary Judgment dated July 7, 2006.

<u>Background Facts</u>.

2. As set forth below, Charles F. Tolbert ("Tolbert"), the president of Defendant American Aircraft Sales International, Inc. ("AASI") was originally deposed in this case on August 9, 2005. A complete copy of that deposition has been filed by the Defendants in conjunction with their Motion for Partial Summary Judgment. (See AASI's Notice of Paper Filing, Item 3)

3. On July 17, 2006, Tolbert signed a 10-page affidavit filed herein by Defendant AASI. (See attached Exhibit "A")

4. Pursuant to this Court's Order of July 28, 2006, an additional deposition of Tolbert was taken on August 17, 2006.

<u>Procedural Facts</u>.

5. As part of their Motion for Partial Summary Judgment, Plaintiffs filed a 6-page Affidavit of Scott Evaschuk wherein he states explicitly that neither he nor Defendant West Coast Aircraft Engineering, Inc. ("West Coast") ever performed a pre-purchase inspection on either the Learjet or the Cessna Citation 500. (Evaschuk Affidavit ¶¶ 8, 9, 11, and 16)

6. One of the essential issues in this case is whether Defendant AASI breached the contract by fraudulently representing to Plaintiffs that a pre-purchase inspection had in fact been conducted by West Coast when in fact no such inspection had taken place and Defendant AASI knew that no such inspection had taken place.

<u>Tolbert's August 9, 2005 Testimony</u>.

7. It should be noted at the outset that <u>none</u> of the AASI employees including Tolbert can define the term "pre-purchase inspection" as set forth in the contract because none of them admits to have had

anything to do with the creation or authorship of the contract. (PSOF #104, 112, 114) Tolbert also states that he was involved in the sale of the Learjet only in a "minor context." His involvement was limited to receiving periodic progress reports from his employees, Thomas Gipe ("Gipe") and Brian Paul ("Paul"). (PSOF #104, 90, 92, 93, 120, 121, 122, 123)

8. Having specifically disavowed any involvement in the creation of the contract between the parties, Tolbert in his affidavit purports to explain how the term "pre-buy" became involved in the contract. (Tolbert Affidavit ¶¶ 10, 11) (PSOF #104) When asked specifically with regard to contacts Tolbert had with Evaschuk regarding the Learjet he recalled that he may have had as many as three conversations but that he could not remember the context or dates of any of those conversations. (PSOF #106) Tolbert was then questioned regarding the initial conversation he had with Evaschuk regarding the pre-purchase inspection of the Learjet during which he concedes that he told Evaschuk that he had a buyer and wanted to have West Coast do a pre-purchase inspection on the Learjet. The second conversation Tolbert recalls with Evaschuk was very brief and only involved Evaschuk stating that he was getting Dallas Air Motive to do a 5-point run (inspection) on the Learjet engines. Tolbert was asked specifically if that was all he could remember about the two conversations he had with Evaschuk and he stated that was the entire sum and substance of his recollection.[1] (PSOF #107)

9. In his deposition, Tolbert states that Paul had told him that Plaintiffs had agreed to have West Coast do the pre-purchase inspection on the Learjet. Tolbert claims he insisted that AASI was not to be directly involved with the pre-purchase inspection. (PSOF #108) Paul, in his deposition, stated that he did not even know Evaschuk prior to the closing of the sale of the Learjet to Plaintiffs in late 2003 and that he is positive that he never discussed with Evaschuk the performance of a pre-purchase inspection on the Learjet. Additionally, Paul never discussed the performance of a pre-purchase inspection on the Learjet with Tolbert. (PSOF #124, 125)

10. In deposition, Tolbert stated that in a pre-purchase inspection regime in the general aviation

---

[1]Tolbert recalls he may have had a third or fourth conversation with Evaschuk regarding the Learjet but he's not sure and does not remember the sum and substance of those discussions.

industry it is a fact that a written report is rendered to the buyer on the findings of the inspecting entity. He also stated that a written report was rendered <u>before</u> any corrective action would be taken with regard to any of the discrepancies or problems which were detected with the aircraft. (Tolbert Depo. p. 71, l. 24-p. 73, l. 2)

<u>Tolbert's Affidavit</u>.

11. Suddenly, and after Evaschuk's Affidavit is filed in this case, Tolbert miraculously discovers his memory regarding many issues in the case, particularly those set forth in Evaschuk's Affidavit. For example, stating in his affidavit that there is no difference between a pre-buy inspection and actual repair work because addressing or correcting specific maintenance problems found with the airplane constitutes a pre-purchase inspection. This statement stands in complete and stark contrast to his previous deposition testimony wherein he states clearly that a pre-purchase inspection report or "pre-buy" is required to be made in a separate written document which is prepared by the inspecting entity and submitted to the buyer and seller <u>before</u> any maintenance work is actually done on the airplane.

12. Tolbert then claims in ¶ 16 of his affidavit that the provisions of a work order (PSOF Depo. Exhibit #10) actually "involves a typical 'pre-buy'". This paragraph again stands in stark contrast to his deposition testimony wherein he specifically stated that the typical pre-buy inspection involves a written report which is rendered <u>before</u> any specific maintenance work is requested to be done on the aircraft and <u>after</u> the pre-purchase inspection has been completed.

13. Clearly, Tolbert is attempting to repudiate his sworn deposition testimony in his subsequent affidavit. This effort has been undertaken after the introduction of the Scott Evaschuk Affidavit in this case wherein Evaschuk specifically denies performing pre-purchase inspections on both the Learjet and the Cessna Citation. Obviously, Defendants cannot produce a pre-purchase inspection report authored by Evaschuk or West Coast because no such document exists. Through his affidavit, he is lamely attempting to bootstrap a work request issued to West Coast into the glaringly empty void where the pre-purchase inspection report from West Coast on the Learjet should exist. (Moreover, he is also claiming at ¶ 14 that a pre-purchase inspection was conducted by West Coast on the Cessna Citation 500; the report for which is also notably absent from the documentation in this case.)

14. Throughout his affidavit Tolbert attempts to define the terms and conditions of the pre-purchase inspection called for in the contract after completely eliminating himself as the author of the contract including all of the provisions dealing with the pre-purchase inspection. If neither Tolbert nor AASI were to be involved in the pre-purchase inspection to be conducted by West Coast as he testified in his deposition, and he had no personal involvement in the drafting or authorship of the entire contract including the pre-purchase inspection provisions, he cannot now through his affidavit seek to oppose Plaintiffs' Motion for Partial Summary Judgment by conjuring up "facts" that baldly contradict his prior deposition testimony.

<u>Tolbert's Second Deposition</u>.

15. Any lingering hopes of Defendants that the blatant inconsistencies between Tolbert's deposition and his affidavit might be remedied by explaining the inconsistencies in a credible fashion are dashed by the latter pages of Tolbert's second August 17, 2006 deposition. During that deposition, Tolbert was questioned about Plaintiffs' Exhibit 51 which is a 5-page document entitled Pre-Purchase Inspection Report dated November 12, 2003. (See attached Exhibit "B") When confronted with this document, Tolbert admitted that it was a pre-purchase inspection report which was conducted upon the same Cessna Citation 500 which he claims that Evaschuk and West Coast performed a different pre-purchase inspection in October 2003. As Tolbert explained, Sierra Industries Ltd. ("Sierra") was buying the Cessna Citation 500 from AASI and required the performance of a pre-purchase inspection prior to concluding the purchase. AASI had assembled all of the aircraft records and logbooks which were shipped to Sierra together with the aircraft for the pre-purchase inspection report. (Tolbert Depo. #2, p. 65, l. 22- p. 72, l. 7 attached as Exhibit "C")

16. Exhibit "B" is a <u>REAL</u> pre-purchase inspection report which is common throughout the general aviation industry. The scope of the pre-purchase inspection of the Cessna Citation 500 included a detailed visual inspection of the interior and exterior of the entire aircraft and inspection of areas beneath of the surface of the aircraft; a review of the customer furnished airframe and powerplant logbooks, records, manuals and documentation; a test flight of the aircraft; and a search of the Federal Aviation

Administration records for any information regarding the mechanical history of the aircraft. All of the airworthy or non-conforming items are then reported to the perspective buyer as set forth in ¶ 3. Any maintenance discrepancies regarding airworthiness status are specifically set forth as well as any informational discrepancies and a list of modifications and damage history of the aircraft. It should be clear to any observer that Exhibit "B" is not a work request with 8 or 9 items set forth. Nor is it an invoice for services rendered. Rather, it is a written report after a thorough inspection of all of the aircraft systems and records setting forth all discrepancies and problems with the aircraft which existed at the time of inspection.

17. This is precisely what Plaintiffs in this action contracted for with Defendant AASI and which AASI repeatedly represented to Plaintiffs had been accomplished by Defendant West Coast prior to October 2003. (Ironically, Tolbert cannot recall any communication to Sierra that a thorough pre-purchase inspection had just been completed upon the Cessna Citation in the month immediately preceding November 12, 2003. If such a report existed, it would by all logic have certainly been transmitted to Sierra as part of the records of the aircraft if for no other reason.)

Legal Argument.

18. Florida courts have long followed the axiom that a party, when met by a motion for summary judgment, cannot be permitted by his own affidavit to baldly repudiate his previous deposition so as to create a jury issue, especially when no attempt is made to excuse or explain the discrepancy. *Ellison v. Anderson*, 74 So. 2d 680 (1954) *Jordan v. State Farm Ins. Co.*, 515 So. 2d 1317 (1987). The affidavit of Charles Tolbert should be stricken by the Court for that reason.

**RESPECTFULLY SUBMITTED** this 28th day of August, 2006.

By /S/Thomas A. Peppler
Arizona Attorney Bar No. 0002721
Attorney for Plaintiffs Inter-Tel, Inc. and Inter-Tel Technologies, Inc.
Thomas A. Peppler, P.C.
4647 N. 32nd St., Suite 115
Phoenix, Arizona 85018-3345
(602) 952-0555 Phone
(602) 952-0624 Facsimile
tp@inficad.com

# CERTIFICATE OF SERVICE

I hereby certify that on **August 28, 2006** I electronically filed the foregoing :**Motion to Strike Affidavit of Charles F. Tolbert and Memorandum of Points and Authorities** with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following: **Michael A. Hanson, Esq.**, Attorney for Defendants Scott Evaschuk and West Coast Aircraft Engineering, and **Daniel Joy, Esq.-George R. McLain, Esq.**, Attorneys for Defendants American Aircraft Sales International, Inc. and Thomas Gipe. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: NONE

By   /S/Thomas A. Peppler
Arizona Attorney Bar No. 0002721
Attorney for Plaintiffs Inter-Tel, Inc. and Inter-Tel Technologies, Inc.
Thomas A. Peppler, P.C.
4647 N. 32nd St., Suite 115
Phoenix, Arizona 85018-3345
(602) 952-0555 Phone
(602) 952-0624 Facsimile
tp@inficad.com