UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTER-TEL, INC., an Arizona corporation;
and INTER-TEL TECHNOLOGIES, INC., an
Arizona corporation,

     Plaintiffs,

v.             Case No.: 8:04-CV-02224-T-17MSS

WEST COAST AIRCRAFT ENGINEERING,
INC., a Florida corporation; SCOTT
EVASCHUK, individually and as agent for
West Coast Aircraft Engineering, Inc.;
AMERICAN AIRCRAFT SALES INTERNATIONAL,
INC., a Florida corporation; and
THOMAS GIPE, individually, and as agent
for American Aircraft Sales International, Inc.,

     Defendants.
_____/

## ORDER ON PLAINTIFFS' MOTIONS TO STRIKE AFFIDAVITS

  This cause is before the Court on Plaintiffs, Inter-Tel, Inc. and Inter-Tel Technologies, Inc.'s, motions to strike the Affidavits of Charles F. Tolbert, dated July 17, 2006 (Dkt. No. 90) and of Thomas Gipe, dated July 17, 2006 (Dkt. No. 92), and responses thereto (Dkt. No. 99-100). The following facts are stated only for purposes of resolving these motions.

FACTUAL AND PROCEDURAL HISTORY

  On June 30, 2003, Plaintiffs, Inter-Tel, Inc. (Inter-Tel) and/or Inter-Tel Technologies, Inc. (Technologies), and Defendant, American Aircraft Sales International (American), entered into a contract whereby a Cessna Citation 500 aircraft was sold to American as a trade-in and partial payment for the purchase of a Learjet (Dkt. No. 78, Plaintiffs' Statement of Undisputed Facts). On October 7, 2004, Plaintiff, Inter-Tel, Inc.,

filed this action against Defendants, West Coast Aircraft Engineering, Inc. (West Coast), Scott Evaschuk (Evaschuk), American, and Thomas Gipe (Gipe), alleging breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act, breach of fiduciary and other common law or statutory duties, negligence, breach of express warranty, breach of implied warranty, and fraud that arose out of the sale of an aircraft (Dkt. No. 1). American and Gipe answered the complaint and made a cross-claim against West Coast on November 5, 2004 (Dkt. No. 10).

On July 15, 2005, Gipe, a sales representative for Defendant American, was deposed in this case (Dkt. No. 78, Gipe Deposition). During the deposition, Gipe was questioned about his role in the negotiation and execution of the contract between the parties, which he signed on behalf of American on June 30, 2003 (Dkt. No. 78, Exhibit "9"). According to Gipe, he did not author the letter of intent agreement and had not discussed the terms and conditions of the letter of intent with Craig Rauchle (Rauchle), president of Plaintiff Technologies, after the letter was transmitted (Dkt. No. 78, Exhibit "9"). That letter of intent conditions the transaction at issue on the conduction of a pre-purchase inspection (Dkt. No. 78, Exhibit "9"). Furthermore, Gipe testified that he could not recall any discussion with the president of Inter-Tel concerning the use of West Coast as a pre-purchase inspection facility prior to June 30, 2003 (Dkt. No. 78, Gipe Deposition).

On August 9, 2005, Charles F. Tolbert (Tolbert), the president of Defendant American, was first deposed in this case. During that deposition, Tolbert testified that he was involved in the sale of the aircraft only in a "minor context". Regarding an industry definition of "pre-purchase inspection," Tolbert conceded that it frequently is a written report rendered to the buyer on findings of the inspecting entity, but that the formalities of a pre-purchase inspection are not always followed, and are based primarily on the expectations of each individual buyer and seller. (Dk. No. 78, Tolbert Deposition)

On January 25, 2006, along with their motion for partial summary judgment, the Plaintiffs filed an affidavit sworn by Evaschuk. In this affidavit, Evaschuk claimed that Tolbert contacted him to arrange for West Coast to conduct the pre-purchase inspection. According to Evaschuk, he responded that Tolbert knew West Coast was not "in the business of performing…pre-purchase inspections under any circumstances." Still,

Evaschuk agreed that West Coast "would perform specific maintenance, repairs, or inspections as specified by a potential buyer or seller in a standard work order format." During numerous subsequent telephone conversations, Tolbert referred to the maintenance work as "the pre-buy" or the pre-purchase inspection. On each occasion, Evaschuk claims, he had to correct Tolbert, informing him that West Coast does not perform pre-purchase inspections. Evaschuk maintained that West Coast would only perform standard specific work orders. (Dkt. No 78, Evaschuk Affidavit)

On July 17, 2006, Tolbert signed a ten-page affidavit. Contained therein is Tolbert's assertion that specific maintenance work "'as specified by a potential buyer', such as the nine-item examination performed by West Coast" in fact constitutes a pre-purchase inspection. Furthermore, Tolbert claimed "there is no single definition of a 'pre-purchase inspection', and that because a buyer pays for the pre-purchase work, that buyer 'can invest as much or as little it wants.'" Additionally, Tolbert opposes a number of claims made in Evaschuk's affidavit. Throughout the affidavit, Tolbert recalls with detail business judgments and decisions made during this sale. (Dkt. No. 90, Exhibit "A")

On July 24, 2006, Gipe signed a seven-page affidavit. Contained therein is Gipe's assertion he "negotiated the terms of the [aircraft] transaction with Rauchle." Additionally, Gipe opposes a number of claims made in Evaschuk's affidavit. Specifically, Gipe contests Evaschuk's assertion that West Coast "did not do 'pre-purchase inspections.'" Throughout the affidavit, Gipe recalls with detail events that occurred leading up to the sale, specifically communications with Rauchle and West Coast regarding a nine-item work order. (Dkt. No. 92, Exhibit "A")

Pursuant to this Court's Order of July 28, 2006, an additional deposition of Tolbert was taken on August 17, 2006 (Dkt. No. 109). During that deposition, Tolbert was questioned about Plaintiffs' Exhibit 51, a five-page "Pre-Purchase Inspection Report" conducted upon the Cessna Citation 500 aircraft American received in trade for the Learjet in question, produced in connection with that aircraft's resale to Sierra Industries Ltd. (Dkt. No. 108, Exhibit "C"). The formal pre-purchase inspection written report done for Sierra is far more detailed than the one provided to the Plaintiffs (Dkt. No. 108, Exhibit "C").

DISCUSSION

Plaintiffs requests this Court strike both the Affidavit of Tolbert and the Affidavit of Gipe. The Plaintiffs claim that when met with its motion for summary judgment, both affidavits were filed to "baldly repudiate" each author's prior deposition (Dkt. No. 90, 92). According to the Plaintiffs, Evaschuk's affidavit created in American the "need of [witnesses] to testify as to its interpretation of the sales contract and the West Coast Work Order" (Dkt. No. 92). The Plaintiffs assert that despite each individual's prior deposition testimony, both Tolbert and Gipe filed contradictory affidavits without attempting to explain the contradictions, in order to create a jury issue (Dkt. No. 90, 92). For these reasons, the Plaintiffs contend, both affidavits filed by Tolbert and Gipe should be stricken.

In response to this, American asserts that a motion to strike is not the proper means to attack the validity of Tolbert's and Gipe's affidavits (Dkt. No. 99, 100). Despite this, American attacks the Plaintiffs' substantive arguments, maintaining that no conflicts actually exist between deposition testimony and affidavit claims, and that the Plaintiffs consistently mischaracterize the testimony made by both men in their affidavits (Dkt. No. 99, 100). This Court finds this argument persuasive.

Under Federal Rule of Civil Procedure 12(f) , upon the motion of any party, the court may order any "redundant, immaterial, impertinent, or scandalous matter" stricken from any pleading. Fed. R. Civ. P. 12(f) (2004). Generally, a motion to strike is denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Pashoian v. GTE Directories n/k/a Verizon Directories*, 208 F. Supp. 2d 1293, 1297 (M.D. Fla. 2002) (citing *Story v. Sunshine Foliage World. Inc.*, 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000) (quoting *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 715 (M.D. Fla. 1997))). Most importantly, a motion to strike is limited to the matters contained within the pleadings. *McNair v. Monsanto*, 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003) (stating that a motion to strike that addresses affidavits is not proper). Under Federal Rule of Civil Procedure 7(a), pleadings include only the complaint, the answer, the reply to any counterclaim, and the answer to any cross-claim. Fed. R. Civ. P. 7(a) (2004). To object to the substance contained in a motion, the

opposing party should raise such objections in the material it submits in opposition to the motion, rather than in a motion to strike. *Smith v. Southeastern Stages, Inc.*, 479 F. Supp. 593, 594-595 (N.D. Ga. 1977). The court can then consider and rule upon the objections when it decides whether to grant the motion. *Id.* at 595.

The plaintiffs have not established that either affidavit "baldly repudiates" each author's deposition by *Pashoian's* stringent standard requiring both prejudice and irrelevance. *Pashoian*, 208 F. Supp. at 1297. It is true that the information contained in the depositions do not completely synchronize with the information contained in the affidavits. Yet, the affidavits do not contradict or repudiate in any significant way the depositions, as the Plaintiffs claim. Instead, each affidavit amplifies the contents of its corresponding deposition.

In their Motion to Strike the Affidavit of Charles Tolbert, the plaintiffs charge that Tolbert could not provide an industry definition of "pre-purchase" inspection during his deposition, but that he was able to provide one in his affidavit, curiously timed to follow Evaschuk's claims (Dkt. No 90). Upon inspection of his deposition, however, Tolbert in fact explained that a pre-purchase inspection could have many meanings, and that "each individual purchaser has a completely different conception of what he wishes or they wish to have done on a pre-purchase" (Dkt. No 90). Compare that answer with the contents of Tolbert's affidavit, "There is no single definition of a 'pre-purchase inspection'…a buyer typically pays for the pre-buy work and can, therefore, invest as much or as little as it wants" (Dkt. No 90, Exhibit "A"). This hardly supports the claim that Tolbert testified that he was unable to define the pre-purchase term until after the Plaintiffs filed Evaschuk's affidavit. Evaluated against Rule 12(f)'s standard, Tolbert's affidavit is relevant in that it addresses the controversy at hand and is not prejudicial, redundant, immaterial, impertinent, nor scandalous. Fed. R. Civ. P. 12(f). The information contained in Tolbert's deposition and affidavit can be understood easily together. Accordingly, Tolbert's affidavit does not "baldly repudiate" the contents of his deposition.

Many of the same arguments apply to the Plaintiffs' Motion to Strike the Affidavit of Thomas Gipe. Gipe testified in deposition that he had no discussions with Rauchle **after** Rauchle was faxed the letter of intent. Gipe's affidavit does not repudiate,

but supports this contention. As a negotiator, Gipe's contact with Rauchle must have occurred **prior** to the transmission of the written agreement. Gipe testified during deposition that he did not recall whether communications occurred to create the final form of the agreement (Dkt. No. 78, Gipe Deposition). Subsequently labeling himself as negotiator does not mean that the two statements are incompatible.  Additionally, Gipe clarifies in his affidavit how West Coast became the pre-purchase inspection facility (Dkt. No. 99, Exhibit "A"). Gipe stated, "any claim that I insisted that the 'pre-buy' be done at West Coast…is false…the provision was included in the contract signed by both parties" (Id.). This claim is corroborated by the actual agreement to purchase, dated June 23, 2003 (Dkt. No. 78, Exhibit "9"). Gipe's deposition is noticeably absent of any information on the subject (Dkt. No. 78, Gipe Deposition). This, then, cannot be the basis for a motion to strike. Gipe's statements do not rise to the prejudicial and irrelevant levels required by *Pashoian* before this Court may strike an Affidavit.  *Pashoian*, 208 F. Supp. at 1297. Accordingly, Gipe's affidavit does not "baldly repudiate" the contents of his deposition.

The Plaintiffs are correct that the affidavits were filed as a direct consequence of the filing of Evaschuk's affidavit. However, both affidavits seek to identify apparent falsehoods.

"Any claim that I insisted that the "pre-buy" be done at West Coast…is false"; "Evaschuk states in his affidavit that, 'Evaschuk responded that Tolbert knew Defendant West Coast was not in the business of performing pre-buy inspections…under any circumstances.' That statement is false"; "…he stated that his company would perform specific maintenance, repairs, or inspections as specified by a potential buyer or seller in a standard work order format.' He made no such communication to me." (Dkt. No. 90, 92, Exhibits "A")

The list goes on. Merely because Evaschuk's affidavit was a motivating factor in the creation of Gipe and Tolbert's affidavits does not create in American the "need of [witnesses] to testify as to its interpretation of the sales contract and the West Coast Work Order" with great urgency as implied in the Plaintiffs' motions. (Dkt. No. 90, 92).

Only in extreme circumstances does this Court believe that a Motion to Strike is the proper vehicle to attack an affidavit. These do not constitute extreme circumstances. Accordingly, it is:

**ORDERED** that the Plaintiffs' motions to strike the affidavits of Charles F. Tolbert (Dkt. No. 90) and Thomas Gipe (Dkt. No. 92) be **DENIED.**

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 1st day of November, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record